## THE WINNIE.

### THE EDITH BEARD.

(Circuit Court of Appeals, Second Circuit. April 14, 1908.)

### No. 228.

COLLISION—TUGS WITH TOWS MEETING—MUTUAL FAULTS.

The tug Beard, passing eastward through the channel between Shooter's Island and Staten Island with a dredge in tow on a hawser, and the tug Winnie, passing westward with two canal boats on her port and one on her starboard side, both *held* in fault for a collision between their tows; the Beard for failing to keep near the right-hand side of the channel,

which is 600 feet wide, and the Winnie for inattention to a meeting schooner and for failure to give the bend signal required by rule 5 of the inland navigation rules (30 Stat. 96, c. 5 [U. S. Comp. St. 1901, p. 2882]).

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, §§ 40, 200–202.

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

Appeal from the District Court of the United States for the Southern District of New York.

Mr. Hyland and Nelson Zabriskie, for libelant.
Sutherland D. Smith, for the Edith Beard.
Robinson, Biddle & Benedict (William S. Montgomery, and Roderick Terry, Jr., of counsel), for the Winnie.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. This is an appeal from a decree of the District Court for the Southern District of New York, entered August 20, 1907, awarding damages to the libelant for injury to his canal boat, Joseph Crandall, against the tugs Winnie and Edith Beard. The injury was occasioned by a collision which occurred in Shooter's Island Channel, which is about 600 feet wide and divides Shooter's Island from Staten Island. Previous to the collision, which occurred April 7, 1906, at about 5 o'clock in the afternoon, the Edith Beard was bound east having in tow a steam dredge on two hawsers 150 feet long, and back of the dredge a water boat also on two hawsers. Before entering the channel the Beard sounded one long blast on her steam whistle and on sighting the Winnie, bound west, she gave one blast indicating her intention to pass port to port. The Winnie, bound west through the channel, had two light canal boats on her port side and one on her starboard side, the Crandall being the inside boat on the port side. No bend signal was blown by the Winnie. The tide was the last of the flood and what there was of it was with the Beard and against the Winnie, but as it set towards the northeast the tendency was to sag the dredge toward the Shooter's Island shore. The wind was about west, the weather was clear. The Beard was followed by a schooner sailing free, or on the port tack. The Beard passed the Winnie, clearing the outside canal boat by about 50 feet. Soon after the schooner was sighted it became evident that she was endeavoring to pass between the Winnie and the Shooter's Island docks. As there was insufficient room for her to do this unless the Winnie moved out nearer the center of the channel, the latter reversed her engines and backed, enabling the schooner to pass in safety, but by a very narrow margin. In executing this maneuver the Winnie's stern was thrown to port and into the course of the dredge in tow of the Beard. As soon as the schooner had passed, the Winnie put her helm hard astarboard and endeavored to clear the dredge but failed to do so, the port corner of the dredge striking the stern of the outside canal boat with such force that she crowded the Crandall against the fenders of the tug and broke in six of her starboard planks.

The testimony was taken in open court. The schooner was not made a party to the action. We think the Beard was negligent in not keeping on the southerly side of the channel, especially in view of the fact that her large unwieldy tow was sagging towards the northerly side, where the Winnie's flotilla, approximately 100 feet in width, was to pass. In addition to this the Beard knew that the overtaking schooner, which had the right of way, was evidently intending to pass both tugs on the northerly side. The conduct of the Beard so limited the theater of operations that a collision was the natural result. The schooner by taking in her booms barely scraped through between the Winnie's starboard tow and the docks and dredge struck the port tow before the Winnie could swing her free. The great weight of testimony is to the effect that the dredge, at least, was well over on the wrong side of the channel. If the Beard had been on the southerly side where the law required her to be, the collision could not have occurred. The district judge held the Winnie in fault for not noticing the schooner until the vessels were almost in collision. We also think she was culpable in not giving the bend signal as required by inland rule 5 (30 Stat. 96, c. 5 [U. S. Comp. St. 1901, p. 2882]), directing a steam vessel, when approaching a short bend where the view is obstructed, to give one long blast of her whistle and, also, in failing to answer the long blast of the Beard.

Counsel for the Winnie suggests that as the tugs exchanged passing signals when they were between 600 and 800 feet apart the omission of the bend signal could not have affected the result one way or the other. We are unable to accede to this view. The rule requiring a bend signal is most wise and salutary, it was absolutely ignored by the Winnie who not only failed to initiate the signal but also failed to answer the signal of the Beard. We cannot say that this violation of the law did not contribute to the collision. As this court said in The Transfer No. 8, 96 Fed. 253, 37 C. C. A. 462:

"This rule, literally construed, is imperative upon every steamer nearing such short bend or curve, whatever may be her own intention as to future navigation after she shall have reached it."

We cannot say that the Winnie's tow was improperly made up, but, as she was navigating an aggregation of boats practically 100 feet square in a narrow channel, she should have taken every precaution not only to inform approaching vessels of her own position but also to learn of their positions at the earliest practicable moment. In both respects she failed. We find no error in the record.

The decree is affirmed with interest and costs.